FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

SEP 28 AM 10: 44

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **DCH HEALTHCARE AUTHORITY,** | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-00-N-1747-W |
| | ] | |
| **MCKESSON HBOC, INC.** a | ] | |
| Corporation, **HBO & COMPANY,** a | ] | |
| Corporation; and **ALBERT J.** | ] | |
| **BERGONZI,** an individual, | ] | |
| | ] | |
| Defendant(s). | ] | |

ENTERED

SEP 2 8 2001

### Memorandum of Opinion

This is an action brought pursuant to 24 U.S.C. § 1332. The plaintiff, DCH Healthcare Authority, owns and operates health care facilities in Tuscaloosa County and Fayette County. The claims by and against defendants McKesson HBOC, Inc. and HBO & Company have previously been dismissed. The cause is presently before the court on defendant Bergonzi's Motion to Dismiss, filed January 12, 2001 (Doc. 33), and his Motion to Dismiss the Amended Complaint, filed April 26, 2001. (Doc. 69).

I.   Statement of Facts.[1]

In December 1996, DCH and HBOC entered into a development contract whereby DCH agreed to purchase from HBOC an integrated software package to be used in DCH's home health care service. (Am. Compl. ¶¶ 15-17). Defendant Bergonzi was an officer of HBOC from the

---

[1] The facts are taken from plaintiff's amended complaint, filed April 2, 2001. When considering a motion to dismiss for failure to state a claim, a court must accept the allegations in the complaint as true, construing them in the light most favorable to plaintiff. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999). Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, the court may consider the documents part of the pleadings for purposes of the Rule 12(b)(6) dismissal without converting the motion to a motion for summary judgment. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997). In this case, Mr. Bergonzi made reference to certain portions of the contract between the parties in making his arguments. Without objection from the plaintiff, the court has considered these limited portions of the contract.



commencement of its dealings with DCH in 1996 until its merger with McKesson Corporation in January 1999 and briefly thereafter. (Am. Compl. ¶ 4).

DCH claims that, sometime between April and December of 1996, defendant Bergonzi was at a meeting in Beaver Creek where representations were made by HBOC representatives that HBOC had the existing capability to develop the software system. (Am. Compl. ¶ 14, 61-62). DCH avers that Bergonzi signed the contract on behalf of HBOC and that he was "involved in, knew of, and approved" the various representations made by HBOC which led up to the execution of the contract. (Am. Compl. ¶ 17). DCH entered into the contract with HBOC in reliance upon the representations that the software was in an advanced state of production and development and that the software system would "fully, efficiently, and accurately integrate and automate the tracking of tasks involved from the actual point of care, to infusion therapy, to provision of durable medical equipment, to hospice service, to final billing of DCH's home health business." (Am. Compl. ¶¶ 15-16).

HBOC represented that the software would be generally available in the fourth quarter of 1997. (Am. Compl. ¶ 20). DCH made scheduled installment payments, paid HBOC for laptop computers for use with the system, and paid travel expenses for HBOC personnel throughout 1997 and the first half of 1998, but the software was not delivered as scheduled. (Am. Compl. ¶¶ 18-26). On August 20, 1998, Bergonzi and other HBOC representatives met with DCH representatives in Atlanta, Georgia. DCH avers Bergonzi and other HBOC personnel continued to assure DCH that the software was only delayed, made various service and related concessions to assuage DCH's concerns, and repeated the representations that HBOC could honor the terms of its contract and that the system would be delivered and functional. (Am. Compl. ¶¶ 27, 73).

2

DCH claims Bergonzi knew before the August 1998 meeting that HBOC did not have the means to follow through with the integration and implementation of the software. (Am. Compl. ¶¶ 28, 74). Based on the representations made by HBOC and Bergonzi, DCH made at least one more installment payment on September 24, 1998, for total payments of $762,801. (Am. Compl. ¶ 30).

On January 12, 1999, HBOC merged with McKesson Corporation and in June 1999, Bergonzi and three other management employees were dismissed for alleged accounting improprieties at HBOC. (Am. Compl. ¶¶ 31-35). On November 5, 1999, McKesson informed DCH that the missing software modules would not be developed or supplied. (Comp. ¶ 42).

DCH claims, on information and belief, that Bergonzi's activities on behalf of HBOC were part of a common plan or scheme to increase revenues to HBOC by booking sales of computer software in spite of the knowledge on the part of Bergonzi and others at HBOC that it could not fulfill its obligations under the agreement or deliver the software as promised. (Am. Compl. ¶ 17, 36). DCH alleges that Bergonzi personally benefitted from the sales to DCH and others in that he received substantial salaries and bonuses related to the inflated stock value of HBOC. (Comp. ¶¶ 38-40).

II.     Standard of Review.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to releif. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Rule 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred

generally." Fed. R. Civ. P. 9(b). The Eleventh Circuit discussed the particularity requirement of Rule 9(b) as follows:

> The particularity rule serves several purposes. Its clear intent is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed. Rule 9(b) must not be read to abrogate Rule 8 [establishing notice pleading], however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading.

*Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985)(citations omitted). "Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham v. Business Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988).

III.    Discussion.

In a diversity case, the federal court must apply the choice of law rules of the forum state. *Trumpet Vine Investments v. Union Capital Partners*, 92 F.3d 1110 (11th Cir. 1996), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In tort cases, Alabama follows the *lex loci delicti* rule, which means that Alabama courts apply the substantive law of the state where the injury occurred. *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991). The state where the injury occurred in a fraud claim is "the state in which the plaintiff suffered the economic impact." *Glass v. Southern Wrecker Sales*, 990 F. Supp. 1344, 1348 (M.D. Ala.), *aff'd*, 163 F.3d 1361 (11th Cir. 1998). The parties apparently agree that Alabama law applies to the fraud claims alleged in the complaint.

Bergonzi claims the fraud claims alleged against him are due to be dismissed. Under Alabama law, a party alleging fraud by misrepresentation must plead and prove: (1) A

misrepresentation of material fact; (2) made willfully to deceive, recklessly, without knowledge or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances; and (4) that the plaintiff incurred damage proximately caused by the reliance. *Luck v. Primus Automotive Financial Services, Inc.*, 763 So. 2d 243, 245-46 (Ala. 2000). To the extent that a party bases its fraud claims on a promise to do some act in the future, the party must prove that at the time of the misrepresentation, the defendant had the intention not to perform the promised act and that the defendant had an intent to deceive. *Vance v. Huff*, 568 So. 2d 745, 750 (Ala. 1990); *Hammonds v. Turnipseed*, 709 So. 2d 39, 41 (Ala. Civ. App. 1997).

Bergonzi argues DCH has not identified any particular fraudulent statement made by Bergonzi or distinguished between representations made by Bergonzi and those made by other HBOC representatives. The complaint must include the details of the defendant's allegedly fraudulent acts, when they occurred and who engaged in them. *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th Cir. 1994). DCH averred that HBOC represented it had the existing capacity to develop the software system and that Bergonzi "was involved in, knew of, and approved the various representations made by HBOC which led up to the execution of the Contract." (Am. Compl. ¶¶ 14-17, 61-62). DCH also alleges Bergonzi knew at the time of the August 20, 1998 meeting that HBOC did not have the means to follow through with the integration and implementation of the software, yet Bergonzi and others made representations that the software was only delayed and would be ready by 2001. (Am. Compl. ¶¶ 27-28, 73-74). In Alabama, officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity. *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986).

Bergonzi argues the contract included provisions specifying the software was a development product and was unwarranted, so that DCH cannot claim it reasonably relied on any representations that the software would perform. A plaintiff cannot prevail on a claim for fraud where the alleged reliance was not reasonable in the circumstances. *Ex parte ERA Marie McConnell Realty, Inc.*, 774 So. 2d 588, 591 (Ala. 2000). However, even though DCH knew the software was not fully developed, it could have reasonably relied on Bergonzi's alleged representations that the software was in an advanced state of development and that HBOC had the ability and plans to perform. Bergonzi also argues DCH cannot allege he knew any representations were false because DCH knew of the developmental nature of the software. Again, DCH has claimed there were misrepresentations concerning the stage of development and HBOC's ability to complete the development. Although Bergonzi was gone by the time McKesson announced the software would not be forthcoming, DCH sufficiently averred that Bergonzi knew at least before the August 1998 meeting that HBOC did not have the means to follow through with the integration and implementation of the software. (Am. Compl. ¶ 26). DCH alleged the representations were made recklessly or with no knowledge as to their truth or falsity. (Am. Compl. ¶ 62). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

Bergonzi argues DCH cannot rely on statements or negotiations outside of the contract because the written document includes a merger clause. A merger clause creates a presumption that the writing represents the final and complete agreement of the parties which can be rebutted by evidence of fraud in the inducement. *Ex parte Palm Harbor Homes, Inc.*, 2001 WL 410485, *3 (Ala. April 20, 2001). DCH has alleged statements made by Bergonzi and other HBOC

6

representatives regarding HBOC's ability to perform under the contract and the software's advanced state of development were false and induced DCH to enter into the agreement. *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So. 2d 777, 782 (Ala. 2000).

Bergonzi argues the suppression claim must be dismissed because DCH has not alleged Bergonzi had a duty to disclose any information to plaintiff or that Bergonzi actually failed to disclose any such information. DCH claims it requested specific information from HBOC personnel, including Bergonzi, regarding the development, capabilities, availability and timing for delivery of the software system and that the defendants failed to disclose material facts about delays and HBOC's ability to deliver the software system. (Am. Comp. 66-67). The duty to disclose may arise from a request for information. *Ex parte Life Ins. Co. of Georgia*, 2001 WL 499313 (Ala. May 11, 2001).

Accordingly, the Motion to Dismiss is due to be denied. A separate order will be entered. Done, this 27th of September, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE